UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00153-MOC

| | | |
|---|---|---|
| **BOBBY BOYER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court upon plaintiff's pro se Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment.[1] Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.    Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ").  After conducting a hearing, the ALJ issued a

---

1    Inasmuch as the Local Civil Rules and Social Security Pretrial Order provide for the filing of cross motions for summary judgment in this administrative review with no responses, no cautionary advice has been provided under <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), concerning the filing of affidavits inasmuch as  review is limited to the Administrative Record.

decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II.    Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

**IV. Substantial Evidence**

**A. Introduction**

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

**B. Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.    If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.    If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

### C.    The Administrative Decision

The ALJ determined that plaintiff, born in 1972, was a "younger individual," with a high school education, limited to unskilled work. Administrative Record ("AR") at 17. The ALJ determined that he had exertional limitations that narrowed the range of light work which plaintiff could accomplish. Id. After providing the vocational expert ("VE") with a hypothetical with limitations that were supported by evidence in the record, the VE opined that a person with such limitations could perform work as an inspector, order caller, and switchbox assembler, jobs that exist in significant numbers in the local economy. Id. at 18. Based on such determination, the ALJ concluded that despite plaintiff's limitations, he could make adjustments to work that exists in significant numbers in the national economy, and was not disabled within the meaning of the Social Security Act. Id.

**D.     Discussion**

**1.     Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error:

I.     Whether the ALJ properly evaluated the medical opinions in the record.

II.     Whether the ALJ properly evaluated plaintiff's mental impairments.

III.     Whether the ALJ properly evaluated plaintiff's subjective complaints.

IV.     Whether the ALJ's step-three determination is supported by substantial evidence.

V.     Whether the ALJ's step-two determination is supported by substantial evidence.

VI.     Whether the ALJ's step-five determination is supported by substantial evidence.

VII.     Whether the ALJ properly evaluated the evidence in the record.

Plaintiff's assignments of error will be discussed *seriatim*.

**2.     First Assignment of Error: Whether the ALJ properly evaluated the medical opinions in the record.**

Plaintiff contends that the ALJ failed to properly consider certain medical opinions contained in the record.  He points to the opinions of Nurse Robinson.  While the opinion of a nurse is not an "acceptable medical source," such opinions

must, nonetheless, be considered by the ALJ.  SSR 06-03p.  Under 20 C.F.R. §

404.1513(d),  plaintiff is permitted to submit evidence from "other sources":

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to--
> (1)    Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);
> (2)    Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
> (3)    Public and private social welfare agency personnel; and
> (4)    Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

Id.

In Morgan v. Barnhart, 2005 WL 1870019 (4th Cir. 2005),[2] the Court of

Appeals for the Fourth Circuit addressed what consideration an ALJ must give to

corroborative lay opinions submitted in accordance with Part 404.1513(d).  There,

the appellate court, while not reaching the issue, agreed that an ALJ could not

simply discredit such lay evidence based on inherent familial bias; instead, the

appellate court found that the ALJ, implicitly and properly, discredited such lay

---

[2]        Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

opinions as not consistent with the medical record and the functional capacity evaluation.  Id. at **7.

An ALJ is to weigh the opinions from sources who are not acceptable medical sources in accordance with the following factors: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source  explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion.  SSR 06-3p. See Pittman v. Massanari 141 F.Supp.2d 601, *608 (W.D.N.C. 2001).

In this case, the evidence from Nurse Robinson includes a completed Medical Source Statement (Physical).   AR at 633-636.   Nurse Robinson determined that while plaintiff's ability to sit was not affected, and he had an unlimited ability to reach, handle, and finger, he could only occasionally and frequently lift less than 10 pounds,  stand/walk less than two hours in an eight-hour day, and he had a limited ability to push/pull with his upper and lower extremities. Id.  The provider also concluded that plaintiff could never climb, balance, kneel, crawl, or stoop, and he had a limited ability to see, hear, speak, and be around

temperature extremes, noise, dust, vibrations, humidity, hazards, fumes, odors, or gases. Id.

In this case, the ALJ satisfied his obligation under SSR 06-03p as he specifically considered such opinion and then explained why he did not fully credit or give more than little weight to Nurse Robinson's opinion. First, the ALJ noted that Nurse Robinson's assessment was the most supportive of plaintiff's claim for disability, and if her opinion was taken at face value and assessed in isolation, her conclusions supported a finding that plaintiff was disabled. Id. at 15. The ALJ found, however, that the opinion could not be taken at face value or assessed in isolation, as he needed to evaluate the opinion in the context of the totality of the record, including its consistency with and support from treatment records, both Nurse Robinson's reports and others in the record, objective medical signs and findings, and other medical opinions. Id.

The ALJ then determined that the limitations in Nurse Robinson's assessment were not consistent with or supported by plaintiff's treatment records, including Nurse Robinson's own records, the objective medical signs and findings (including radiographic and laboratory results), and other medical opinions. Id. at 15-16. The ALJ found that Nurse Robinson's records did not establish that plaintiff reported or was observed as having functional restrictions approximating what the

provider assessed, nor were there any other records, objective medical signs or findings, or medical opinions that were consistent with the extreme limitations assessed. Id. at 16. The ALJ then concluded that Nurse Robinson's opinion was not supported, and thus, it was entitled to very little weight. Id.

The court finds that the ALJ complied with SSR 06-03p, 20 C.F.R. § 404.1513(d), and Pittman. Moreover, the ALJ satisfied his duty of explaining why he gave such opinion little weight, which the court finds to be an important aspect of the administrative process. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). Finding the ALJ's decision to give little weight to the opinion of Nurse Robinson to be fully supported by substantial evidence of record, the court overrules plaintiff's first assignment of error.

### 3. Second Assignment of Error: Whether the ALJ properly evaluated plaintiff's mental impairments.

In his second assignment of error, plaintiff contends that the ALJ failed to properly consider his mental impairments. Specifically, plaintiff takes issue with the ALJ's consideration of treatment records from Daymark Recovery, which included a Global Assessment of Functioning score of 43.

Review of the ALJ's decision reveals that he did in fact address such mental health records, acknowledging that such a score would indicate that plaintiff's symptoms were severe. AR at 16. However, the ALJ determined that such score

represented plaintiff's functioning based on an untreated mental health issue and that there was no basis to conclude that such condition would not have improved had plaintiff sought treatment. Id. The ALJ found that in the absence of a well-supported longitudinal record that established specific functional limitations that persisted despite compliance with treatment, an initial assessment that such untreated symptoms were severe could not be construed as an endorsement of a conclusion that plaintiff was or would remain incapable of meeting the mental demands of any work whatsoever. Id. As such, the ALJ gave such evidence little weight. Id. While plaintiff contends that the ALJ was required to address the GAF score in his opinion, such is not required as such opinion does not directly touch on plaintiff's ability to perform work related activity. Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (holding that "[t]he failure to reference a GAF score is not, standing alone, however, a sufficient ground to reverse a disability determination.").

Plaintiff also contends that the ALJ failed to consider records from Excel Personal Development. These records, which are not included in the administrative record, date from more than a year before plaintiff's alleged date of onset of disability, AR at 425, making them of little probative value. Further, plaintiff was represented at the administrative hearing and when asked by the ALJ

whether there was any other evidence plaintiff wanted the ALJ to consider, the representative stated that he believed the record was complete.   AR at 29.

Having carefully considered plaintiff's assignment of error, the court finds that the ALJ properly considered all the mental health evidence of record, did not fail to develop the record, and that his determinations are supported by subtantial evidence.  The court will, therefore, overrule this objection.

### 4. Third Assignment of Error: Whether the ALJ properly evaluated plaintiff's subjective complaints.

Plaintiff claims that the ALJ did not adequately consider his subjective allegations of pain.  The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id. at 336.  A two-step process for evaluating subjective complaint was in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints

corresponds with the Commissioners relevant rulings and regulations. <u>See</u> 20 C.F.R § 404.1529; SSR 96-7p.[3]

Step One requires an administrative law judge (hereinafter "ALJ") to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." <u>Craig</u>, 76 F.3d at 594.

Step Two requires that the ALJ next evaluate the alleged symptoms' intensity and persistence along with the extent to they limit the claimant's ability to engage in work. <u>Id.</u>, at 594; <u>see also</u> 20 C.F.R. § 404. 1529(c); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. <u>Craig</u>, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence" includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type,

_____

[3] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p, 1996 WL 374186, at *2 (statement of purpose).

dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Id.

Review of the ALJ's determination reveals that he properly assessed plaintiff's complaints of pain. AR 12-15. Further, the ALJ satisfied his obligation of why he did not fully credit plaintiff's testimony and evidence concerning pain and other subjective impairments. Id. at 14. While plaintiff maintains that his symptoms prevented him from performing even basic work related activities, Pl. Br. at 2-4, there is no evidence that his mental impairments prevented him from performing simple, routine, and repetitive tasks. Other than one visit to a mental health profession in March 2011, AR at 422-431, the record is devoid of notes from a treating mental health source, plaintiff reported that as of March 2011 he was taking no psychotropic medications, id. at 437, and the record is replete with providers observing that plaintiff was alert an oriented to three spheres, his mood and affect were appropriate/pleasant, his speech was normal, his cognitive function was intact, and his eye contact was normal. Id. at 307, 341, 343, 354, 492, 589, 640, 651, 655, & 691. Plaintiff's contention that the ALJ failed to consider the third-party function report is equally without merit as the ALJ stated he considered all the evidence in the record. Id. at 10, 14, &17.

Plaintiff also contends that he did not have access to health insurance during such period and could not follow up with specialists. Pl. Br. at 3. Review of the record indicates that plaintiff was seen at a number of providers during this period and there was no evidence of record, or argument for that matter, that plaintiff's failure to seek treatment for symptoms he contends were disabling was due to lack of funds.

In <u>Preston v. Heckler</u>, 769 F.2d 988 (4th Cir. 1985), the Court of Appeals for the Fourth Circuit held:

> Because noncompliance with an effective remedial measure provides an alternative basis for denying benefits, the fact finder may draw upon it to negate at any stage of the sequential analysis an otherwise allowable finding of disability. And because in the general proof scheme, this basis for denying benefits is analogous to that involving the establishment of residual functional capacity to engage in other gainful employment, the burden to establish it by substantial evidence should also be on the Secretary.

<u>Id.</u>, at 990. The law and regulations governing the issue of failure to follow prescribed treatment or medication, as well as substantial evidence of record, support the ALJ's finding that some of the plaintiff's symptoms could not be considered because plaintiff failed to seek treatment which could have alleviated them. The Social Security Regulations provide

> In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work. . . . If you do not follow the prescribed treatment without a good reason, we will

not find you disabled, or if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. 404.1530(a)-(b). The regulations list the following "good reason[s] for not following treatment:

(1)     The specific medical treatment is contrary to the established teaching and tenets of your religion.

(2)     The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.

(3)     Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.

(4)     The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5)     The treatment involves amputation of an extremity, or a major part of an extremity.

20 C.F.R. 404.1530(c).

Social Security Ruling 82-59 discusses "justifiable cause for failure to follow prescribed treatment" in more detail. It adds more reasons to the list set out in the above regulation, including the inability to afford treatment, which is what plaintiff is alleging in this appeal. The ruling explains:

The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable. Although a free or subsidized source of treatment is often available, the claim may be allowed when such treatment is not

reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored. Contacts with such resources and the plaintiff's financial circumstances must be documented.

S.S.R. 82-59, at 5. In <u>Gordon v. Schweiker</u>, 725 F.2d 231, 237, (4th Cir. 1984), the appellate court upheld the ruling's requirement that a plaintiff show he or she has exhausted all sources of free or subsidized treatment and document his or her financial circumstances before a plaintiff can show good cause for failing to comply with prescribed treatment. <u>Id.</u> Clearly, the burden of production is the Commissioner's with respect to the issue of failing to follow prescribed treatment. <u>See</u> <u>Preston v. Heckler</u>, <u>supra</u>, at 990. This burden has been met with the extensive evidence that the plaintiff did not take medications or treatments that could have ameliorated his symptoms.

The plaintiff did not, however, satisfy the burden of providing evidence to meet the requirements of "good cause" for failing to seek out or follow treatment due to plaintiff's financial condition. <u>See</u> <u>Gordon</u>, <u>supra</u>, at 237. The ALJ properly discounted the plaintiff's allegations of disability due to symptoms which could have been controlled.

Plaintiff has assigned error to numerous aspects of the ALJ's evaluation of his subjective complaints stemming from his mental and physical health issues. After reviewing the entirety of the record in conjunction with the ALJ's decision,

the court finds that the ALJ properly evaluated such issues, that such evaluation is wholly consistent with current case law, and that it is fully supported by substantial evidence of record. The court overrules this assignment of error.

5. **Fourth Assignment of Error: Whether the ALJ's step-three determination is supported by substantial evidence.**

At Step Three of the sequential evaluation process, the burden is on the claimant to establish that his impairment meets or equals a listing section. Claimant must demonstrate that his condition manifests all the specific findings described in the set of medical criteria for the listed impairment in question. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The ALJ concluded that plaintiff did not have an impairment or a combination of impairments that met or equaled a listing section. AR at 13.

Here, plaintiff contends that he met Listing Section 5.05F for hepatic encephalopathy. Such condition is defined as a recurrent or chronic neuropsychiatric disorder, characterized by abnormal behavior, cognitive dysfunction, an altered state of consciousness, and ultimately coma or death, with a diagnosis established by changes in mental status, EEG abnormalities, or abnormal laboratory values. 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 5.00D10, 5.05F. The claimant must then meet Section One and either Section Two or Section Three, as follows:

1.  Documentation of abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness (for example, confusion, delirium, stupor, or coma) that is present on at least two evaluations at least 60 days apart within a consecutive 6-month period; and
2.  History of transjugular intrahepatic portosystemic shunt or any portosystemic shunt; or
3.  One of the following occurring on at least two evaluations at least 60 days apart within the same consecutive 6-month period as in F1:
    a. Asterixis or other fluctuating physical neurological abnormalities; or
    b. EEG demonstrating triphasic slow wave activity; or
    c. Serum albumin of 3.0g/dL or less; or
    d. INR of 1.5 or greater.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 5.05F.

The ALJ determined that this claim failed from inception inasmuch as there was no evidence that plaintiff had a definitive diagnosis of hepatic encephalopathy. AR at 13. There simply was no error in the ALJ's finding at the third step as there is no evidence of record providing a definitive diagnosis that plaintiff suffers from such condition. Such assignment of error will be overruled.

**6.  Fifth Assignment of Error: Whether the ALJ's step-two determination is supported by substantial evidence.**

Plaintiff next contends that the ALJ erred at step two of the sequential evaluation process when he determined that plaintiff's enlarged spleen did not constitute a severe impairment.

When an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p. As the ALJ found that plaintiff had other severe impairments, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Pompa v. Comm'r of Social Security, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003).[4] In order for an impairment to be severe it must significantly limit a plaintiff's ability to perform basic work activities. See 20 C.F.R. § 404.1520(c).

The ALJ found that while plaintiff testified that his spleen was enlarged and he had to avoid heavy lifting because of that condition, the medical records failed to establish that he had an enlarged spleen. AR at 13. The ALJ noted that plaintiff's January 2012 CT scan revealed that his spleen was unremarkable, and therefore, the impairment was not medically determinable, as a chronic or intermittent condition, and thus, it was not a severe impairment. Tr. at 13. Substantial evidence supports the ALJ's determination and the plaintiff's assignment of error will be overruled.

---

[4] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

**7.     Sixth Assignment of Error: Whether the ALJ's step-five determination is supported by substantial evidence.**

As discussed above, the ALJ determined at step five that plaintiff had the residual functional capacity to perform a number of jobs that existed in significant numbers in the local and national economies.  Plaintiff contends that such determination is not supported by substantial evidence.

The ALJ is solely responsible for determining the Residual Functional Capacity (hereinafter "RFC") of a claimant.  20 C.F.R. § 404.1546(c).  In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments.  S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir.  1981).

The ALJ determined that plaintiff could not return to his past relevant work. AR at 19. The ALJ then found that plaintiff was a younger individual, he had at least a high school education, and transferability of skills was not an issue. Id. at 17.  The ALJ also concluded that plaintiff had the RFC to perform a range of light work.  Id.  The ALJ further determined that since plaintiff's ability to perform the full range of light work was impeded by non-exertional limitations, he had to

consult a vocational expert. Id.  In response to the ALJ' hypothetical question based on such RFC, the vocational expert testified that plaintiff could perform work as an inspector, order caller, and switchbox assembler.  Id. at 47.  Ultimately, the ALJ determined that based on the framework of the vocational expert's testimony and Medical-Vocational Rule 202.21 there were other jobs in the national economy that Plaintiff could perform, and therefore plaintiff was not disabled. AR at 17-18.

Hypothetical questions posed by an ALJ to a vocational expert must fully describe a plaintiff's impairments and accurately set forth the extent and duration of the claimant's pain, if any.  Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978). Where the ALJ properly formulates his hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the vocational expert great weight.  Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984).  Because plaintiff's conditions and limitations were accurately portrayed to the vocational expert, the ALJ did not fail to consider all the evidence, and his reliance on the opinion of the vocational expert that jobs were available to a person with plaintiff's limitations was proper.

**8. Seventh Assignment of Error: Whether the ALJ properly evaluated the evidence in the record.**

In what appears to be a catch-all assignment of error, plaintiff contends that the ALJ failed to consider all the evidence by dismissing a great deal of his favorable evidence and interpreting test results without medical assistance. Such contention is without merit as the ALJ fully explained why he did not fully credit certain evidence and, moreover, he did not substitute his judgment or render his own medical opinions. Instead, the ALJ properly resolved conflicting medical evidence, which is precisely the role of the ALJ. Diaz v. Chater, 55 F.3d 300, 306 n. 2 (7th Cir.1995).

As to plaintiff's contention that ALJ failed to mention all the evidence in his decision, generally, failure by the Commissioner to consider an entire line of evidence falls well below the minimal level of articulation required by the Social Security Act. Id. at 307. However, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). Here, the ALJ gave full consideration to all the evidence of record, discounted some evidence but explained why he did so, satisfying his obligation of explanation. In the end, his determination that plaintiff was not disabled within the meaning of the Social Security Act is fully supported by substantial evidence or

record.

**E.     Conclusion**

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error.   Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence.   See Richardson v. Perales, supra; Hays v. Sullivan, supra.   Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.


**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1)     the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2)     the plaintiff's Motion for Summary Judgment (#11) is **DENIED**;

(3)     the Commissioner's Motion for Summary Judgment (#12) is **GRANTED**; and

(4)    this action is **DISMISSED**.

Signed: September 3, 2013

Max O. Cogburn Jr.
United States District Judge